[No. 961.]

ANNA B. STONE, RESPONDENT, v. GEORGE T. MARYE
ET AL., APPELLANTS.

CERTIFICATES OF STOCK — TRANSFER OF — TRUE OWNER, WHEN ESTOPPED FROM ASSERTING TITLE.—Certain certificates of mining stock, issued in the usual form, in the name of, and indorsed by, C. & Co., as trustees, were delivered by plaintiff to M. as collateral security for an indebtedness then due to M. M. delivered the certificates to G. who had full knowledge of the former transaction. Plaintiff, thereafter, tendered to M. & G. the full amount of the indebtedness. G., thereafter, claiming to be the owner, employed defendants as stock brokers to sell said certificates in the stock board of San Francisco. Defendants sold the same and the proceeds were placed to G.'s credit. Defendants had no knowledge of the previous transaction and were not aware that plaintiff claimed any interest in the certificates: *Held*, that plaintiff was estopped from asserting her title to the certificates as against the defendants.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

*Lewis & Deal and E. B. Stonehill,* for appellants.

The plaintiff having clothed her creditors with all the *indicia* of ownership and enabled them to transfer the stock to innocent parties without notice of her interest, should suffer any loss occasioned by her own act. (*Brewster* v. *Sime,* 42 Cal. 139; *Thompson* v. *Toland,* 48 Id. 99; *Crocker* v. *Crocker,* 31 N. Y. 507; *McNeil* v. *Tenth Nat. Bank,* 46 Id. 325; *Winter* v. *Belmont M. Co.,* 53 Cal. 428.)

*C. H. Belknap,* for Respondent.

By the Court, HAWLEY, J.:

From the facts in this case, as found in the court below, it appears that in the month of September, 1877, the plaintiff deposited with Martha McSweegan two certificates representing fifteen shares of the capital stock of the Ophir Silver Mining Company, as collateral security for the payment of one hundred and eighty-five dollars, then due and owing from said plaintiff to said McSweegan; that thereafter plaintiff tendered to Martha Sweegan the full amount of said indebtedness, and demanded the return of said certificates of stock, which was refused; that thereafter said Martha McSweegan assigned said indebtedness to William Gordon, for a valuable consideration, and delivered to said Gordon said certificates of stock as security for said loan; that Gordon received the certificates with full knowledge of the circumstances under which they were held by the said Martha McSweegan; that thereafter plaintiff tendered to said Gordon the full amount of said indebtedness, and demanded a return of said certificates, which was refused; that thereafter, on the sixth day of October, 1877, the said certificates of stock were delivered to the defendants by said Gordon, and on the thirtieth day of October, 1877, said Gordon employed defendants, at Virginia City, Nevada, as stock-brokers, to sell said certificates in the said San Francisco Stock and Exchange Board; and that said defendants, as such stock-brokers, did cause said certificates to be sold for said Gordon, and passed the proceeds thereof to Gordon's

credit; that at said dates Gordon represented and claimed to be the owner of the said certificates; and the defendants had no notice at any time, until the eighteenth day of December, 1877, that plaintiff owned, or claimed to own, said certificates, or either of them, or that she had any interest in either; that on the eighteenth day of December, 1877, the plaintiff demanded of the defendants the possession of said certificates of stock, and defendants refused to deliver the same; that said certificates of stock were in the usual form of certificates representing mining shares, one being in the name of and indorsed by "Cahill & Co., trustees," the other in the name of and indorsed by "Cope, Uhler & Co., trustees;" that it is the custom in the state of Nevada and in the state of California to deal in mining stocks and transfer certificates of the Ophir and other mining stocks by indorsement on the certificates in the same manner as the certificates in question were indorsed, and that such custom had prevailed from the first of January, 1877, up to the present time.

Upon this state of facts, we are of opinion that the court erred in rendering judgment in favor of the plaintiff.

The plaintiff having allowed McSweegan and Gordon to appear at different times as the true owners of said certificates of stock, with full power and control over the property, to be exercised in such a manner as to induce innocent third parties to deal with them, or either of them, as the true owner, is estopped from asserting her title to the same as against the defendants, who had no knowledge of the true state of the title.

The rights of the defendants, as stock-brokers, do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the acts of the real owner, which precludes her from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, she caused or allowed to appear to be vested in the party who delivered the certificates to the defendants.

All the authorities cited by appellant fully sustain this

position. See also *Moore* v. *The Metropolitan National Bank,* 55 N. Y. 46; *Holbrook* v. *New Jersey Zinc Co.* 57 N. Y. 616.)

The judgment of the district court is reversed, and cause remanded for a new trial.